```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

C.Z., by and through his parents)
CHRIS and ROSE ZIEMBA,          )
                                )
              Plaintiff,        )
                                )
     v.                         )     No.  09 C 6171
                                )
PLAINFIELD COMMUNITY UNIT       )
SCHOOL DISTRICT NO. 202,        )
                                )
              Defendant.        )
```

MEMORANDUM OPINION AND ORDER

Minor child C.Z., by and through his parents Chris and Rose Ziemba (collectively "Ziembas"), filed this action for attorneys' fees against Plainfield School District ("District") pursuant to the Individuals with Disabilities Education Act ("Act," 20 U.S.C. §§1400-1482)[1] and Article 14 of the Illinois School Code ("Code," 105 ILCS 5/14-1 to 5/14-16). This action follows an administrative due process proceeding, initiated by Ziembas on behalf of C.Z. under Code §8.02a(f), that charged District with having failed to provide C.Z. a free and appropriate public education ("FAPE").[2] That due process proceeding concluded with

---

[1] All further citations to provisions of the Act will take the form "Act § --," omitting the prefatory "20 U.S.C." All further citations to the provisions of the Code will take the form "Code § --," omitting the prefatory "105 ILCS 5/14."

[2] This Court generally disfavors alphabet-soup-type abbreviations of defined terms (other than, for example, commonly-used abbreviations of the type referred to in Bluebook Rule 6.1), preferring instead to use appropriate words for that purpose. It has employed the word-type usage here except as to a few terms (such as FAPE) that already enjoy frequent (if not

the entry of a final Administrative Order by the Independent Hearing Officer ("Hearing Officer").

District has now filed a Motion To Dismiss under Fed. R. Civ. P. ("Rule") 12(b)(6). For the reasons stated below, this Court denies District's motion.

## Rule 12(b)(6) Standard

Under Rule 12(b)(6) a party may move for dismissal of a complaint on grounds of "failure to state a claim upon which relief can be granted." District's motion contends that the dismissal is warranted because C.Z. cannot prevail as a matter of law and because the Complaint's allegations are not plausible.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) did away with the more generous Rule 12(b)(6) formulation first announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

universal) usage in this area of the law. To turn to the substance of the preceding sentence in the text, Code §8.02a(f) provides that a parent may request a due process hearing to address "[a] problem relating to the actual or proposed placement, identification, services, or evaluation of the student." That provision reflects the Act's requirement that states receiving federal assistance must establish procedural safeguards, including "an opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" (Act §1415(b)(6)).

relief." Twombly, 550 U.S. at 570 held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." To the same effect, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555).

Erickson v. Pardus, 551 U.S. 89 (2007)(per curiam) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) then provided a further understanding of the Twombly pronouncement--the first of those within a few weeks and the second nearly two years later. In between those follow-up cases, our Court of Appeals' opinion in Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) described Twombly and Erickson as establishing "only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." Then post-Iqbal, Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) has reconfirmed that the Airborne Beepers reading of federal pleading law continues to be accurate. Brooks, id. describes Iqbal as admonishing that plaintiffs must not "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims."

Against that backdrop, familiar Rule 12(b)(6) principles

3

continue to require the district court to accept as true all of plaintiff's well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)). What follows, then, is an appropriate summary of the facts as stated in the Complaint.

## Factual Background

C.Z. is a 6-year old child with autism, developmental delays and severe speech delays (Compl. ¶3). In May 2006 District found him eligible for special education services because of his autism and created an Individualized Education Program ("IEP") that placed him in the District's autism program and established goals for him to achieve by May 2007 (Compl. ¶8). Over the next two years C.Z. achieved only one of his IEP goals (Compl. ¶9). District's IEP team then terminated or lowered C.Z.'s IEP goals and recommended continuation of the same services (Compl. ¶10).

In 2008 Ziembas hired an independent agency called Growing Minds to assess C.Z. and recommend appropriate programming for him (Compl. ¶¶11-13). At an emergency IEP meeting convened on May 30, 2008 at Ziembas' request, they requested an alternative placement (at a therapeutic day school or at home) based on the Growing Minds recommendation, but the IEP team did not agree (Compl. ¶15). District promised to convene another IEP meeting before the beginning of the 2008-09 school year, but it did not

do so despite C.Z.'s requests (Compl. ¶¶16-17).

At an informal IEP meeting at the beginning of the 2008-09 school year, Ziembas requested that District consult with a verbal behavioral analyst on C.Z.'s program, but the IEP team did not agree (Compl. ¶18). So in the fall of 2008 Ziembas hired Dr. Daniel Moran to conduct an independent evaluation of C.Z., and he concluded that C.Z.'s placement did not meet the child's needs (Compl. ¶20). At an IEP meeting on February 17, 2009,[3] the IEP team acknowledged problems with C.Z.'s IEP goals and with C.Z.'s inability to achieve those objectives (Compl. ¶21). At the meeting the IEP team considered Dr. Moran's recommendations but did not agree to a change in placement (Compl. ¶21).

On March 5 Ziembas filed a request for due process on behalf of C.Z., charging that District had denied C.Z. FAPE (Compl. ¶22). On or about March 9 Ziembas sent a 10-day notice to District, stating their intention to enroll C.Z. unilaterally in an alternative placement, the Chicago Education Project ("Project")(Compl. ¶23). At an April 2 IEP meeting the IEP team decided to maintain C.Z.'s then-current placement. So on that date Ziembas removed C.Z. from the District and enrolled him in the Project, paying the tuition themselves (Compl. ¶25). Since that enrollment C.Z. has experienced significant progress (Compl.

---

[3] From this point forward, all dates occurred in 2009 unless otherwise indicated. Hence most further date references need not (and will not) designate the year involved.

¶¶41-43).

On May 11 the Hearing Officer presiding over C.Z.'s due process proceeding conducted a pre-hearing conference (Compl. ¶28). That conference resulted in a report that listed C.Z.'s requested relief, including (1) retroactive reimbursement for tuition at the Project, (2) prospective placement at the Project and (3) compensatory education for the period when District allegedly failed to provide FAPE (Compl. ¶28), scheduling a hearing for June 10 (Compl. ¶28).

On June 8 District's counsel sent the Hearing Officer an electronic mail message stating (Compl. ¶29, Ex. 1):

> The [ ] District has agreed to place [C.Z.] at [the Project] retroactively to April 2....In the District's opinion, this resolves all the issues identified by parents in their due process request and this matter is resolved.

After receiving that message, C.Z.'s counsel filed a motion stating that the parties had not reached a settlement and requesting that the Hearing Officer make a ruling that certain issues were not yet resolved (Compl. ¶32). In response District filed a motion listing the relief to which it agreed, but the list did not include compensatory education (as already explained, one of C.Z.'s requests for relief)(Compl. ¶¶33-34).

On June 9 the Hearing Officer convened a telephonic status conference to address the parties' motions (Compl. ¶35). That resulted in an Administrative Order that confirmed District had

6

previously agreed to C.Z.'s requested relief except for compensatory education (Compl. ¶38, Ex. 2 ¶10). According to the Administrative Order, "[f]urther discussion" on the compensatory education issue during the status conference had "resulted in" District's commitment to provide compensatory education for C.Z. in the form of an additional two years of education at the Project (Compl. ¶38, Ex. 2 ¶10). With the Hearing Officer thus having obtained and memorialized District's withdrawal of its objection as the result of his addressing of the parties' cross-motions, the evidentiary hearing that had been scheduled for June 10 did not have to be convened (Compl. ¶39).

## Attorneys' Fee Awards under the Act

Under Act §1415(i)(3)(B) a district court "may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." T.D. v. LaGrange Sch. Dist., 349 F.3d 469, 478 (7th Cir. 2003) has read "prevailing party" in the Act as having the meaning established in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001), under which "prevailing party" refers only to a party who or that has achieved a "judicially sanctioned change in the legal relationship of the parties." But "prevailing party" status does not stem from a party's "voluntary change in conduct," because a voluntary change "lacks the necessary judicial imprimatur" on the change (id.).

7

Buckhannon, id. at 604 identified two examples of scenarios creating prevailing party status: (1) when a party wins a judgment on the merits and (2) when the court enters a consent decree. Those examples are not exclusive--as Zessar v. Keith, 536 F.3d 788, 798 (7th Cir. 2008) has explained:

> Cases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality.

For example, T.D., 349 F.3d at 478 (internal quotation marks omitted) reasoned that "some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree." By contrast, a private, wholly voluntary settlement is not sufficient (Walker v. Calumet City, 563 F.3d 1031, 1034 (7th Cir. 2009)).

District's Motion argues that C.Z.'s claim for attorneys' fees under the Act must be dismissed because he is not a prevailing party. District characterizes the result in the due process proceeding as a voluntary settlement lacking the requisite judicial imprimatur, and it argues (D. Mem. 5-6) that two Seventh Circuit cases--T.D. and Bingham v. New Berlin Sch. Dist., 550 F.3d 601, 602-03 (7th Cir. 2008)--therefore foreclose C.Z.'s recovery of attorneys' fees as a matter of law (D. Mem. 5-6). In both those cases the Court of Appeals held that a parent

8

was not a prevailing party under the Act because the parties had reached a voluntary settlement. To the same end, D. Mem. 6-7 also contends that the Complaint does not plausibly allege the presence of a judicial imprimatur (D. Mem. 6-7).

C.Z. responds that in Buckhannon terms he obtained a "judicially sanctioned change in the legal relationship of the parties" (532 U.S. at 605) through the due process proceeding. As C.Z. sees it, the result of the due process proceeding was not a voluntary settlement because the Hearing Officer had to and did intervene, and only then did C.Z. receive all the relief that was requested (C.Z. Mem. 10-12). C.Z. Mem. 1 urges that the District essentially confessed judgment, making the result analogous to a victory on the merits.

This opinion will first consider whether T.D. and Bingham somehow preclude prevailing-party status for C.Z., and it will then go on to address District's contentions of implausibility. Those two decisions will be looked at in the order in which they were decided--the first in 2003, the second in 2008.

In T.D. the parents had received partial relief through a due process proceeding, and they appealed to the federal district court seeking the relief that had not been awarded (349 F.3d at 472-73). That action was then settled by the parties' agreement that the child would be placed in a specialized program at a local public school, rather than being placed in a private school

9

as the parents had originally requested (id. at 473). In that situation the Court of Appeals found that the parties' settlement at the district court level had not conferred prevailing party status on the parents because it was wholly voluntary and "[did] not bear any marks of a consent decree" (id. at 479). But--and it is a critical "But" for present purposes--the parents were held to be "prevailing parties" in having prevailed at the due process hearing (349 F.3d at 480). As will be seen later, that portion of the T.D. opinion provides a definite (and definitive) precedent supporting C.Z.'s position here.

In Bingham the parents pursued a due process hearing to seek only one form of relief: reimbursement for their son's private school tuition (550 F.3d at 602). Because the school district voluntarily issued, and the parents accepted, a check for the requested amount a few weeks before the scheduled hearing date, the administrative law judge dismissed the proceeding as moot (id.). There the Court of Appeals held that the parents were not prevailing parties because the school district had changed its position without any judicial input--hence the outcome was essentially a voluntary settlement (id. at 603).

This case differs from both Bingham and T.D. in significant respects. In T.D. the settlement agreement did not provide for all requested relief (the child was placed in a public school rather than a private school), while here C.Z. did receive all

10

the relief that was sought.  Moreover, the agreement reached before the district court acted there was apparently wholly voluntary on the school district's part, while here District did not succumb by agreeing to the compensatory education fought for by the parents until the parties' cross-motions were being addressed by the Hearing Officer--that is, not until that quasi-judicial officer had entered the picture in meaningful terms.  As for Bingham, there the school district agreed to all the requested relief without the involvement of a hearing officer, but here District agreed only to partial relief until the Hearing Officer's intervention.  Given those factual differences, T.D. and Bingham do not call for the dismissal of C.Z.'s Complaint.  And C.Z.'s characterization of the outcome of the administrative due process proceeding as a cave-in by District rather than as a settlement surely meets the plausibility standard of Twombly and Iqbal.

That said, this opinion turns to consideration of whether C.Z.'s Complaint offers plausible allegations of the existence of a judicial imprimatur.  On that score the result here follows directly from the decision in T.D.  Although that case rejected an attorneys' fee award attributable to the mutually-agreed-upon settlement reached before the district court acted to resolve the parties' cross-motions for summary judgment, it upheld a fee award for the parents as having been the prevailing parties

11

earlier at the administrative level. Listen to what T.D., 349 F.3d at 479 (one District Court citation omitted) said on that issue:

> The IDEA's fee-shifting provision allows attorney's fees to the party that prevails "[i]n any action or proceeding" brought under the IDEA. 20 U.S.C. §1415(i)(3)(B). As other courts have noted, the word "proceeding" as used in other parts of the statute refers to administrative or due process hearings. See, e.g., id. §1415(d)(2)(F) & (k)(7)(C)(I)("due process proceedings"); Id. §1415(i)(2)(B)(i) & (i)(3)(D)(ii) ("administrative proceedings"). And the Court in Buckhannon gave no indication that it intended to overturn its decision in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). That case held that the fee-shifting provision in Title VII, which also referred to "action or proceeding," allowed courts to award attorney's fees to the prevailing party in administrative hearings. Id. at 61, 100 S.Ct. 2024.

Accord, A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., 407 F.3d 65, 76 (2d Cir. 2005).

Despite the obvious applicability of that discussion to the administrative proceeding here, District's motion asserts that C.Z. does not plausibly allege that a judicial imprimatur was involved in the due process proceeding, suggesting that C.Z.'s characterization of the due process proceeding is not accurate. And D. Mem. 6-7 contends that certain indicia of such an imprimatur are missing in this case, pointing out that the Administrative Order was entered by a Hearing Officer, not a judge, and arguing that the Administrative Order does not explicitly order District to take action (that is, does not

12

contain mandatory language), does not retain jurisdiction and does not contain court approval of the relief.

That position is just dead wrong. Just as in the aspect of T.D. in which the school district lost on the attorneys' fee issue, in this instance the order in C.Z.'s favor was issued in the administrative due process hearing--here it was the Administrative Order entered by the Hearing Officer. And District cannot bootstrap itself by urging the absence of mandatory language or the retention of jurisdiction in that Administrative Order where, after all, it surrendered totally in the proceeding before the Hearing Officer, enabling the latter to confirm its full compliance with C.Z.'s demands.

To be sure, the Administrative Order concluded by granting District's motion to dismiss as moot and denying C.Z.'s motion (essentially because it was needless). But the mootness was not created by anything like a "settlement," when the basis for the order involved no element of compromise--instead C.Z. and his parents obtained every element of the relief they had sought. It is really the height of absurdity for District to urge the nonretention of jurisdiction and the absence of court approval when any need for that was attributable to its own surrender, obviating any need for C.Z. to go to court to obtain all the relief that had been sought. It will be remembered that Zessar, 536 F.3d at 798 speaks of "sufficient finality" as being enough

to trigger an award, and that was surely present in this instance.

C.Z.'s Complaint is surely not barred as a matter of law, and its factual allegations are far more than sufficiently plausible. Hence District's motion is denied as to C.Z.'s claim under the Act.

### Attorney's Fees under the Code

Under Code §8.02a(i):

> In any instance where a school district willfully disregards applicable regulations or statutes regarding a child covered by this Article, and which disregard has been detrimental to the child, the school district shall be liable for any reasonable attorney's fees incurred by the parent in connection with proceedings under this Section.

In re Dontrell H., 382 Ill. App. 3d 612, 619, 888 N.E.2d 627, 633 (1st Dist. 2008) interprets that provision as requiring a finding of willful disregard before attorney's fees can be awarded.

D. Mem. 8 contends that the Complaint "does not adequately allege" that District "willfully disregard[ed] applicable regulations or statutes" to C.Z.'s detriment. To the contrary, the Complaint alleges several instances of willful disregard by District, including allegations that (1) it failed to provide FAPE both before and after C.Z. filed the due process proceeding (Compl. ¶¶9-10, 14-25), (2) it "unreasonably" delayed resolution of the dispute with C.Z. (Compl. ¶59), (3) it falsely represented to the Hearing Officer that the parties had resolved all issues

14

in dispute (Compl. ¶59) and (4) it "unreasonably" failed to comply immediately with the Hearing Officer's Order (Compl. ¶59).

District objects that the Hearing Officer's Order includes no finding of willful disregard, but nothing in the Code indicates that such a finding is necessary before a party pursues attorney's fees in court. <u>Dontrell H.</u> echoes the Code in requiring a finding of willful disregard before such fees are awarded, but the case confirms that determination is for the <u>court</u> to make (after all, only the court--not a hearing officer--can make an enforceable award).

District further argues that some of C.Z.'s allegations of willful disregard do not meet the plausibility standard. Again District's objections impermissibly call for factual determinations in its favor. For example, D. Mem. 9 asserts that its alleged June 8 misrepresentation to the Hearing Officer (its false assertion that the parties had resolved all issues) cannot be interpreted as a false statement because the representation stated only District's opinion.

But C.Z. Mem. 19-20 makes the more than plausible allegation that District knew that the issue of compensatory education was not yet resolved,[4] which provides more than a reasonable basis for a finding that District had made a false representation.

---

[4] Indeed, the Hearing Officer's Administrative Order confirmed District's nonagreement to that element of relief until the June 9 proceeding.

Similarly, C.Z.'s allegation that District unreasonably delayed resolution is not implausible simply because, as D. Mem. 10 says, the final deadline for exchange of witness lists and documents fell only five days before the scheduled hearing date.

Finally, D. Mem. 10 objects that C.Z. offers insufficient allegations of the "detriment" that C.Z. suffered due to the alleged "willful disregard." But the Supreme Court's recent caselaw on pleading standards does not establish a fact-pleading regime in place of a notice-pleading regime--as our Court of Appeals has said, it teaches only that "the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8" (<u>Airborne Beepers</u>, 499 F.3d at 667). Under that standard C.Z. need not provide detailed descriptions of the detriment it suffered, for the Complaint gives District sufficient notice of the claim. At the very least the nature of the detriment that would stem from denial of FAPE--one example of willful disregard that C.Z. asserts--is readily inferred.

District's objections to the Complaint are unpersuasive. Hence the motion is denied as to C.Z.'s claim under the Code as well.

<u>Conclusion</u>

For the reasons already stated at length, District's Rule 12(b)(6) motion to dismiss is denied. But this Court would be

remiss if it did not echo Judge Rovner's discussion for the panel in Bingham, 550 F.3d at 604-05--a discussion that points up the antisocial incentive that a position such as that taken by District here, pumping for an unthinking overextension of Buckhannon, would create.  This Court looks forward to the next status hearing, which is hereby set for 9 a.m. March 17, 2010, to see whether a return to reason, rather than District laying itself open to a further fee award, may take place.

                             _____
                             Milton I. Shadur
                             Senior United States District Judge

Date:    January 26, 2010